# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| MARK ANDREW BILTZ,<br><br>Plaintiff,<br><br>vs.<br><br>GOOGLE, INC., *et al.*,<br><br>Defendants. | CIVIL NO. 18-00059 DKW-KJM<br><br>**ORDER (1) GRANTING APPLICATION TO PROCEED WITHOUT PREPAYMENT OF FEES OR COSTS; AND (2) DISMISSING COMPLAINT IN PART WITH LEAVE TO AMEND** |

## INTRODUCTION

On February 14, 2018, Plaintiff Mark Andrew Biltz, proceeding pro se, filed a Complaint against Alphabet Inc., Google Inc., Google AdWords, and Sundar Pichai, alleging breach of contract, fraud, and intentional infliction of emotional distress ("IIED"). Dkt. No. 1. Biltz also filed an Application to proceed *in forma pauperis* ("IFP Application").[1] Dkt. No. 3. The Court GRANTS the IFP Application. Biltz's Complaint, however, fails to include sufficient factual allegations to state a claim for IIED or to satisfy the heightened pleading requirement applicable to his fraud claim. Because amendment of these claims may be possible, the Complaint is DISMISSED IN PART as to Counts II and III with leave to amend, with instructions below.

---

[1] Pursuant to Local Rule 7.2(d), the Court finds these matters suitable for disposition without a hearing.

**DISCUSSION**

Because Biltz is appearing pro se, the Court liberally construes his filings. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir. 1987) ("The Supreme Court has instructed the federal courts to liberally construe the 'inartful pleading' of pro se litigants.") (citing *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam)). The Court recognizes that "[u]nless it is absolutely clear that no amendment can cure the defect . . . a pro se litigant is entitled to notice of the complaint's deficiencies and an opportunity to amend prior to dismissal of the action." *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995); *see also Crowley v. Bannister*, 734 F.3d 967, 977–78 (9th Cir. 2013).

**I.     Plaintiff's IFP Application Is Granted**

Federal courts can authorize the commencement of any suit without prepayment of fees or security by a person who submits an affidavit that demonstrates an inability to pay. *See* 28 U.S.C. § 1915(a)(1). "An affidavit in support of an IFP application is sufficient where it alleges that the affiant cannot pay the court costs and still afford the necessities of life." *Escobedo v. Applebees*, 787 F.3d 1226, 1234 (9th Cir. 2015) (citing *Adkins v. E.I. Du Pont de Nemours & Co.*, 335 U.S. 331, 339 (1948)); *see also United States v. McQuade*, 647 F.2d 938, 940

(9th Cir. 1981) (The affidavit must "state the facts as to affiant's poverty with some particularity, definiteness and certainty.") (internal quotation omitted).

When reviewing an application filed pursuant to § 1915(a), "[t]he only determination to be made by the court . . . is whether the statements in the affidavit satisfy the requirement of poverty." *Martinez v. Kristi Kleaners, Inc*., 364 F.3d 1305, 1307 (11th Cir. 2004). While Section 1915(a) does not require a litigant to demonstrate absolute destitution, *Adkins*, 335 U.S. at 339, the applicant must nonetheless show that he is "unable to pay such fees or give security therefor." 28 U.S.C. § 1915(a).

Here, the IFP Application indicates that Biltz is not employed, has no assets, currently receives $750.00 in disability benefits per month, and has no other source of funds, such as a checking or savings account. Based upon the IFP Application, Biltz's income falls below the poverty threshold identified by the Department of Health and Human Services ("HHS") 2018 Poverty Guidelines. *See* Annual Update of the HHS Poverty Guidelines, *available at* https://www.federalregister.gov/documents/2018/01/18/2018-00814/annual-update-of-the-hhs-poverty-guidelines. Accordingly, the Court finds that Biltz has made the required showing under Section 1915 to proceed without prepayment of fees, and GRANTS his IFP Application.

## II. The Complaint Is Dismissed in Part

At this preliminary stage and construed liberally, the Court finds that the Complaint alleges a plausible state-law claim for breach of contract for purposes of this initial screening.[2] Even given a liberal construction, however, the factual allegations in the Complaint are insufficient to state a claim upon which relief may be granted for IIED, and the fraud claims likewise are not pled with the particularity required by Federal Rule of Civil Procedure 9(b). Counts II and III are therefore dismissed, albeit with leave to amend.

### A. Standard of Review

The Court subjects each civil action commenced pursuant to 28 U.S.C. § 1915(a) to mandatory screening and can order the dismissal of any claims it finds "frivolous, malicious, failing to state a claim upon which relief may be granted, or seeking monetary relief from a defendant immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

Dismissal is proper when there is either a "'lack of a cognizable legal theory or the absence of sufficient facts alleged.'" *UMG Recordings, Inc. v. Shelter Capital Partners, LLC*, 718 F.3d 1006, 1014 (9th Cir. 2013) (quoting *Balistreri v.*

---

[2] Biltz alleges that this Court has subject matter jurisdiction under 28 U.S.C. § 1332. He also asserts that no contract exists "that binds to any other state other than Hawaii, where the Agreement took place, and Plaintiff 'opted out' of arbitration in this matter after receiving an email displaying [certain] fraudulent invoices." Compl. 5–6.

*Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)). A plaintiff must allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Weber v. Dep't of Veterans Affairs*, 521 F.3d 1061, 1065 (9th Cir. 2008). This tenet—that the court must accept as true all of the allegations contained in the complaint—"is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555); *see also Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) ("[A]llegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively.").

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). Factual allegations that only permit the Court to infer "the mere possibility of misconduct" do not show that the pleader is entitled to relief as required by Rule 8. *Id.* at 679.

5

## B. The Complaint is Dismissed in Part

Biltz seeks $12,000,000.00 in damages from various Google entities based upon a distribution and marketing agreement with Defendants relating to a Brian Evans' music video entitled "At Fenway." As detailed below, Biltz's Count I claim for breach of contract survives initial screening. However, his Count II fraud claim, and Count III IIED claim are dismissed with leave to amend.

### 1. Count I: Breach of Contract

Biltz alleges that, on an unspecified date in 2012, "Defendants entered a verbal Agreement with Plaintiff to allow for exclusive distribution via its YouTube platform for the broadcasting of the music video, 'At Fenway,'" which co-stars William Shatner. Compl. at 2. Biltz produced the music video, and alleges that, under the Agreement, "Evans would receive $1 per view for two full years [and] [t]he video has received more than 11 million views to date on the service." Compl. at 2. According to Biltz, Defendants "decided not to honor the original Agreement," and "instead turned the exclusive agreement to exclusively broadcast a music video into an 'ad campaign,' through its Google 'AdWords' platform," without his consent. Compl. at 3.

Generally, a breach of contract claim must set forth (1) the contract at issue; (2) the parties to the contract; (3) whether plaintiff performed under the contract;

(4) the particular provision of the contract allegedly violated by defendants; and

(5) when and how defendants allegedly breached the contract. *See Evergreen Eng'rg, Inc. v. Green Energy Team LLC*, 884 F. Supp. 2d 1049, 1059 (D. Haw. 2012); *see also Otani v. State Farm Fire & Cas. Co.*, 927 F. Supp. 1330, 1335 (D. Haw. 1996) ("In breach of contract actions . . . the complaint must, at minimum, cite the contractual provision allegedly violated."); *Kaar v. Wells Fargo Bank, N.A.*, 2016 WL 3068396, at *1 (N.D. Cal. June 1, 2016) ("To claim a breach of contract in federal court the complaint must identify the specific provision of the contract allegedly breached by the defendant.").[3]

Liberally construed, the Complaint contains sufficient plausible "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A plausible claim provides more than "a sheer possibility that a defendant has acted unlawfully." *Id*. Biltz alleges that he entered into an agreement with Defendants, describes its

---

[3]"[A] contract need not be in writing unless a statute requires it. Conversely, an oral or parol contract is unenforceable where a statute requires it to be in writing." *Credit Associates of Maui, Ltd. v. Carlbom*, 98 Hawai'i 462, 50 P.3d 431, 436 (2002) (citing 17A Am.Jur.2d Contracts § 181, at 193 (1991) (footnote omitted). In order for an oral contract to be enforceable, there must be an offer, an acceptance, and consideration. *Douglass v. Pflueger Hawaii, Inc*., 110 Hawai'i 520, 135 P.3d 129 (2006); Restatement (Second) Contracts § 71. The Court notes that the Statute of Frauds is an affirmative defense, which must be particularly plead—it does not bar a claim for breach of an oral contract. Fed. R. Civ. P. 8(c) ("In responding to a pleading, a party must affirmatively state any avoidance or affirmative defense, including: . . . statute of frauds [.]"). *See Estate of Tahilan v. Friendly Care Home Health Servs., Inc*., 731 F. Supp. 2d 1000, 1006 (D. Haw. 2010).

relevant terms, and, although he describes the agreement as a verbal one, points to the particular contractual provisions that Defendants allegedly violated—"$1 per view for two full years." Compl. at 2. These allegations are generally sufficient at this preliminary stage for Defendants to be on notice of the basis of Biltz's contract claim and to defend it.

### 2. Count II: Fraud and/or Fraudulent Misrepresentation

Count II alleges that, without his permission, Defendants converted the distribution Agreement with Biltz into an advertising campaign, for which he was fraudulently billed, and upon his discovery of the fraud, Biltz was credited the amounts back, in an effort to cover up the misrepresentations. The Complaint alleges that Defendants—

> valued [the campaign] at over $3.5 million, and fraudulently marked the invoices as "PAID," despite the Plaintiff never paying a single dime for the campaign, nor seeking an advertising campaign, applying for credit, or signing any agreement whatsoever with Google AdWords. In late 2017 Defendants manipulated the invoices as displayed in the attached exhibits. Not only did this defraud the Plaintiff and the IRS, . . . [a]dditionally, by claiming the invoices were "PAID," it put our former Company, MCS, INC. and potentially the Plaintiff in his individual capacity . . . on the hook for state and federal taxes that were never supposed to exist, never were paid, and never were requested by the Plaintiff.

Compl. at 3. Attached to the Complaint are screen shots or print outs of what

appear to be electronic account balances, or invoices, sent to Plaintiff. According to Biltz, these exhibits reflect "invoices submitted to Plaintiff for this fictional ad campaign, with $0 taxes paid by Defendant," (Ex. A); "statements by Defendants making the invoices as 'PAID,' when they never were," (Ex. B.); "an email from a Google AdWords employee (to Brian Evans of the music video) requesting to see a signed Agreement, when this Google employee knew the Agreement was verbal and binding, consummated by the broadcasting of the music video on its YouTube platform and making no claim that there was an existing ad campaign," (Ex. C); "Credit Memo[]s totaling $2,482,504.28 and $1,031,589.80, none of which has been paid to Plaintiff towards the amount owed. In these Credit Memo[]s, they specifically state 'Do Not Pay. This is a credit for your account." And yet, no payment of this credit has been made toward the balance due per the original Agreement" (Ex. D); "When a Demand for Payment was made, Defendants then, again, manipulated the invoices to claim the amounts were due, even invoicing Plaintiff for an amount that he never received," (Ex. F); "an invoice for an amount never paid to the Plaintiff, and on this particular invoice, taxes are noted as due (but not on any other previous invoices, in retaliation for reporting this matter to the SEC and IRS . . .)," (Ex. G); and "display[ing] invoices 'PAID,' and then manipulated in January 2018, five years after the original invoices, as Defendants attempt to cover

up their deception when Plaintiff requested what was owed per the original Agreement," (Ex. H). Compl. at 3–4. Finally, Biltz alleges that "the individual [with] whom this [original] Agreement was entered into was conveniently fired in 2017," around the same time Plaintiff demanded payment. Compl. at 5.

Based on the totality of these allegations, the Complaint falls short of alleging facts necessary to support the elements of a claim for fraud or fraudulent misrepresentation, with the specificity required for each Defendant. In Hawai'i—

> Fraud and fraudulent misrepresentation share the same elements. *Compare Fisher v. Grove Farm Co.*, 123 Haw. 82, 103, 230 P.3d 382, 403 (Haw. Ct. App. 2009) (stating the elements of a fraud claim) *with Ass'n of Apartment Owners*, 115 Haw. at 263, 167 P.3d at 256 (stating the elements of a fraudulent misrepresentation claim). Like fraudulent misrepresentation, the elements of fraud are "1) false representations made by the defendant, 2) with knowledge of their falsity (or without knowledge of their truth or falsity), 3) in contemplation of plaintiff's reliance upon them, and 4) plaintiff's detrimental reliance." *Fisher*, 123 Haw. at 103, 230 P.3d at 403.

*Prim Liab. Co. v. Pace-O-Matic, Inc.*, 2012 WL 263116, at *8 (D. Haw. Jan. 30, 2012). Although the Complaint generally asserts that Defendants defrauded Plaintiff by switching the terms of their Agreement and concealing the new terms, the Complaint fails to identify what particular misrepresentations were made and/or omitted, what concealments were kept from Plaintiff, who made those particular representations and/or omissions, and when those events occurred.

10

These deficiencies are significant because Rule 9(b) imposes a heightened pleading standard on a party alleging fraud and requires the party to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "Averments of fraud must be accompanied by the 'who, what, when, where and how' of the misconduct charged." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009). Rule 9(b) "demands that, when averments of fraud are made, the circumstances constituting the alleged fraud be specific enough to give defendants notice of the particular misconduct so that they can defend against the charge and not just deny that they have done anything wrong." *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotations omitted). Fraud claims, "in addition to pleading with particularity, also must plead plausible allegations. That is, the pleadings must state 'enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the misconduct alleged].'" *Cafasso ex rel. United States v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 566 (2007)).

Even if this Court liberally construes Count II as alleging that Defendants fraudulently attempted to alter certain agreements, invoices, or credit notices, the Complaint does not allege when or how each of these Defendants engaged in the specific fraudulent conduct, including which specific agreements and/or invoices

each Defendant fraudulently attempted to alter. For example, although Google CEO Pichai is named in both his individual and official capacities, there are no allegations specific to his conduct whatsoever in the Complaint. When there are multiple defendants—

> Rule 9(b) does not allow a complaint to merely lump multiple defendants together but require[s] plaintiffs to differentiate their allegations when suing more than one defendant . . . and inform each defendant separately of the allegations surrounding his alleged participation in the fraud. In the context of a fraud suit involving multiple defendants, a plaintiff must, at a minimum, identif[y] the role of [each] defendant[ ] in the alleged fraudulent scheme.

*Swartz v. KPMG LLP*, 476 F.3d 756, 764–65 (9th Cir. 2007) (alterations in *Swartz*) (internal quotation marks and citations omitted); *see also Meridian Project Sys., Inc. v. Hardin Constr. Co.*, 404 F. Supp. 2d 1214, 1226 (E.D. Cal. 2005) ("When fraud claims involve multiple defendants, the complaint must satisfy Rule 9(b) particularity requirements for each defendant.") (citations omitted).

In short, the current factual allegations supporting Count II do not meet the heightened pleading standard for a fraud claim. Because it might be possible to cure these defects, Biltz is granted leave to amend this claim.

### 3. Count III: the IIED Claim

Biltz's IIED claim alleges that "Defendants went out of their way to not only deprive [him] of his monies due, but then actually created invoices for what appears to be an 'ad campaign,' that the Plaintiff never ran, never applied for, was never provided a credit line for, and simply marked the invoices 'PAID,' in an effort to conceal their agreement and instead turn it into what appears as an ad campaign." These allegations are insufficient to maintain a claim for IIED under Hawaii law.

"The elements of the tort of intentional infliction of emotional distress are 1) that the act allegedly causing the harm was intentional or reckless, 2) that the act was outrageous, and 3) that the act caused 4) extreme emotional distress to another." *Hac v. Univ. of Haw.*, 102 Hawai'i 92, 106–07, 73 P.3d 46, 60–61 (2003) (adopting IIED standard from Restatement (Second) of Torts).[4] "The question whether the

---

[4]The Restatement describes what constitutes "outrageous" conduct:

> It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

Restatement (Second) of Torts § 46, cmt. d. (1965).

actions of the alleged tortfeasor are . . . outrageous is for the court in the first instance, although where reasonable persons may differ on that question it should be left to the jury." *Nagata v. Quest Diagnostics Inc.,* 303 F. Supp. 2d 1121, 1127 (D. Haw. 2004). An IIED claim cannot be sustained by "threats, annoyances, petty oppressions, or other trivialities." *Young v. Allstate Ins. Co.,* 119 Hawai'i 403, 425, 198 P.3d 666, 688 (2008) (quoting Restatement (Second) of Torts § 46 cmt. d).

Even assuming the truth of the allegations in the complaint, Biltz has not met the high standard necessary to state a claim for IIED. Although Biltz asserts that Defendants' conduct "caused tremendous Emotional Distress," the Complaint does not assert factual allegations sufficient to show that Defendants' conduct was "extreme" and "outrageous." Without more, and even if true, his allegations that Defendants deprived him of monies due and "created invoices for what appears to be an ad campaign . . . in an effort to conceal their agreement," Compl. at 5, are not "so outrageous in character as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Restatement § 46, cmt. d. Accordingly, Count III is dismissed with leave to amend.

### III.    Limited Leave To Amend Is Granted

Because Plaintiff is proceeding pro se, and the Court cannot currently conclude that his IIED and fraud claims are futile or cannot be stated with the

required particularity, the Court grants Plaintiff leave to amend. To be clear, this leave is granted for Plaintiff to attempt to cure the deficiencies in his Count II (fraud) and Count III (IIED) claims only, but not to add new or different claims. If Plaintiff chooses to file an amended complaint, he should comply with the Federal Rules of Civil Procedure and the Local Rules for the United States District Court for the District of Hawaii, and designate the amended complaint as the "First Amended Complaint." If Plaintiff does not file an amended complaint **by March 14, 2018**, the Complaint will remain the operative pleading, and the Court will issue an order directing service.

An amended complaint generally supersedes prior complaints. *See Ramirez v. Cty. of San Bernardino*, 806 F.3d 1002, 1008 (9th Cir. 2015). The Court will not refer to the original complaint to make an amended complaint complete, although it will not ignore contradictory statements of fact between an original and amended complaint. Local Rule 10.3 requires that an amended complaint be complete in itself without reference to any prior pleading. Defendants not named in the caption, any claims that are not dismissed herein but not realleged, and any claims dismissed without prejudice herein that are not re-pled in an amended complaint may be deemed voluntarily dismissed. *See Lacey v. Maricopa Cty.*, 693 F.3d 896, 928 (9th Cir. 2012) ("[C]laims dismissed with prejudice [need not] . . . be repled in a[n]

15

amended complaint to preserve them for appeal . . . [b]ut . . . claims [that are] voluntarily dismissed [are] . . . waived if not repled."). And in any amended complaint, Plaintiff should include only one claim per count.

## CONCLUSION

Based upon the foregoing, Biltz's IFP Application is GRANTED (Dkt. No. 3), and the Complaint is DISMISSED in part with leave to amend Counts II (fraud) and III (IIED). Dkt. No. 1.

If Biltz fails to file an amended complaint in accordance with the terms of this Order by **March 14, 2018**, the Complaint will remain the operative pleading, and the Court will issue an order directing service.

IT IS SO ORDERED.

Dated: February 20, 2018 at Honolulu, Hawai'i.



Derrick K. Watson
United States District Judge

---

*Biltz v. Google Inc. et al.*; Civil No. 18-00059 DKW-KJM; **ORDER (1) GRANTING APPLICATION TO PROCEED WITHOUT PREPAYMENT OF FEES OR COSTS; AND (2) DISMISSING COMPLAINT IN PART WITH LEAVE TO AMEND**